THE ATTORNEY GENERAL *vs.* THE WARE RIVER RAILROAD COMPANY.

Suffolk. June 15. — July 16, 1874. COLT & ENDICOTT, JJ., absent.

The Sts. of 1872, c. 53, § 12, and c. 180, § 3, relating to railroads thereafter "constructed," crossing at grade, do not apply to a railroad corporation which prior to the passage of these statutes has located the line of its road, exercised its right of taking land for the use of its road, incurred liability for land damages and expense in laying the road bed, in rock excavation, in the construction of abutments for a bridge, and in the building of a long bridge at grade in the immediate vicinity of the point where it intended to cross another railroad at grade, although the railroad and the crossing at grade were not completed.

INFORMATION filed May 21, 1874, by the Attorney General in behalf of the Commonwealth, at the relation of the railroad commissioners.

The information set forth that before and at the time of the commission of the acts hereinafter complained of, the Cheshire Railroad Company, a corporation established by law in this Commonwealth, had located and constructed its railroad through the town of Winchendon, in the county of Worcester, and was in the actual use and occupation of the same with its engines and cars in the transportation of passengers and freight; that after the

location, construction, use and occupation of said railroad by the Cheshire Railroad Company, the Ware River Railroad Company, a corporation established by law in this Commonwealth, constructed its road and laid its tracks so as to cross the road and tracks of the Cheshire Railroad Company at Winchendon at grade ; and said road and tracks at Winchendon now cross the road and tracks of the Cheshire Railroad Company at grade; that said crossing at grade of the Ware River Railroad Company at Winchendon is maintained and used by said company in violation of the laws of the Commonwealth, which prohibit the crossing at grade of existing railroad tracks by the tracks of railroads thereafter constructed ; that said Cheshire Railroad was an existing railroad at the time of the commission of the acts complained of, and that said crossing at grade is now maintained and used by said Ware River Railroad Company without right, and that said Ware River Railroad Company with its railroad now crosses the Cheshire Railroad at Winchendon at grade without the consent and approval of the railroad commissioners, as required by law.

The prayer was for process against the defendant corporation, that it might appear and answer to the information; that it should be enjoined from further use of said grade crossing, and decreed to take up and remove the same.

The answer of the defendant set forth the following facts: The defendant corporation was chartered March 16, 1867, and the charter renewed April 1, 1869. The charter authorized the company to build a road from Palmer to the state line of New Hampshire, crossing the Cheshire Railroad in the town of Winchendon. In pursuance of the charter, the company proceeded to locate the road, and such location was duly filed in December 1869, and by that location the Ware River Railroad crossed the Cheshire Railroad in the town of Winchendon at the point in controversy, and it was the intent and purpose to make such crossing at grade, that being the most convenient and most practicable method of crossing at that point. After the filing of said location and before the passage of the Sts. of 1872, *c.* 53, § 12, and *c.* 180, § 3, relating to railroad crossings at grade, the Cheshire Railroad Company filed with the county commissioners of Worcester County a petition setting forth that the Ware River Railroad

Company had filed the location of their railroad across the land and tracks of the Cheshire Railroad, and asked said commissioners to assess damages sustained by said Cheshire Railroad Company by reason of such taking and locating ; that a full hearing was thereupon had and damages assessed by said commissioners in the sum of eighteen hundred dollars, which sum the Ware River Railroad Company has been ready at all times to pay.

After the location as aforesaid, the defendant corporation proceeded with the construction of the road, and the road was brought to sub-grade, ready for the sleepers up to a point within one thousand feet from the proposed crossing. A heavy rock cut had been made about two thousand feet southerly of the crossing, and it was a part of the original plan in the construction of the road that the track across the low land approaching the crossing should be built upon a trestle. The Cheshire Railroad at this point is built upon an embankment twenty feet in height. On the northerly side of the proposed crossing, and not far distant therefrom, a bridge one hundred and twenty-five feet in length had been built at grade with the Cheshire tracks and the said crossing. Depot land had been purchased in the immediate vicinity of the bridge on the northerly side of the Cheshire Railroad, and the abutments were completed to carry the track on a bridge over and above the highway. All the work above indicated was done prior to the passage of the St. of 1872, c. 180 ; and since the passage of that statute the company have proceeded in good faith in the prosecution of their work, and expended a considerable sum of money in the belief that the right to cross the Cheshire Railroad at grade at the point indicated was fully secured to it.

The Monadnock Railroad Company, whose charter gives it the right to connect with the Ware River Railroad, comes into the town of Winchendon on the north of the Cheshire Railroad location. The Ware River Railroad and the Monadnock Railroad are north and south lines, and the interests of both and of the public require that they should be connected. Sixteen miles of the defendant's railroad, from Palmer to Gilbertville, was in operation prior to the act of 1872. The whole road is forty-nine and a half miles in length, from Palmer to Winchendon.

The case was reserved by *Wells*, J., on the bill and answer, for the consideration of the full court.

*C. F. Adams, Jr.* ( *C. R. Train,* Attorney General, with him,) for the Commonwealth.    The defendant corporation in the present case was a corporation whose railroad was not " constructed " on April 8, 1872, the date on which the St. of 1872, *c.* 180, went into effect.    The statute law recognizes four stages of railroad existence : 1. A corporation chartered and organized to build a road.    2. The location of a road.    Gen. Sts. *c.* 63, § 17.    3. The construction of a road.    Gen. Sts. *c.* 63, §§ 40–45.    4. The road in operation.    A statute relating to railroad corporations " hereafter incorporated " would signify one thing ; a statute relating to roads " hereafter located " would signify another thing ; one relating to roads " hereafter constructed," yet another thing ; and one relating to roads " hereafter put in operation," a fourth thing. Precedents of each form of words may be found in the statutes. See Sts. 1870, *c.* 325, § 3 ; 1871, *c.* 384 ; 1871, *c.* 333 ; 1874 *c.* 223.    On April 8, 1872, the road of the defendant corporation was " located " at the point of crossing in question, but its road was not " constructed " at or near that point.    The rule of construction in such case is well established. *Opinion of the Justices,* 7 Mass. 523.

The cases of *Stearns* v. *Old Colony Railroad,* 1 Allen, 493, *Baxter* v. *Boston & Worcester Railroad,* 102 Mass. 383, and *Sawyer* v. *Vermont & Massachusetts Railroad,* 105 Mass. 196, are distinguishable from the case at bar.    In each of these cases a private person had assumed the obligation to fence for a consideration in money which entered into the award made by the county commissioners, and which the corporation paid.    The transaction was consummated.    The court held that a law subsequently passed imposing an obligation to fence did not affect the duties of parties under such consummated transactions. The owner of land, having for a valuable consideration assumed the burden of fencing, could not, by an act of the legislature, be relieved of it and have it shifted back on to the corporation.    The case at bar is wholly distinct.    No outside party entered into it ; no transaction had been consummated.    It was simply a new statutory obligation, relating to construction, imposed upon a corporation.    No money had passed under any award of commissioners , no rights had been acquired, or obligations assumed, with which the statute interfered.    It was simply

a new duty imposed; and if it was an expensive duty, that was a matter resting in legislative discretion.

*B. F. Thomas,* for the defendant.

AMES, J. The statutes upon which this proceeding is to be maintained (if it can be maintained at all) are by their express terms made applicable only to such railroads as should be "hereafter constructed." The defendant's railroad was not only in course of actual construction, and partly completed, but its line had been located, its right of taking land for the use of the road had been exercised, and its liability for land damages incurred; much expense had been incurred and much labor had been done in laying the road bed, in rock excavation, in the construction of abutments for a bridge over the highway, and in the building of a long bridge at grade with the Cheshire Railroad. All this had been done in the immediate vicinity of the proposed crossing, and with a view to a crossing at grade, at a time when such a method of construction was legally allowable. To require the defendant to change its proposed course of construction, and to cross the Cheshire road by passing over or under it, would render much of the expense already incurred and much of the construction, so far as it had been advanced when the statutes in question went into effect, wholly useless. It might also require a material change in the location, and a renewed and different taking of land for the use of its road.

In *Stearns* v. *Old Colony Railroad,* 1 Allen, 493, it was held that the St. of 1846, *c.* 271, requiring railroad corporations to erect and maintain fences along any railroad which they might thereafter construct, did not apply to a railroad which had been located and partially constructed at the time of its passage. In that case, the road had been partially graded. A like decision was given in *Baxter* v. *Boston & Worcester Railroad,* 102 Mass. 383, a case in which the location was filed and the construction "had been begun" before the statute took effect. See also *Sawyer* v. *Vermont & Massachusetts Railroad,* 105 Mass. 196.

We see no reason why the construction sanctioned by those decisions is not equally applicable to this case; and it is therefore ordered that the *Information be dismissed.*